**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

ANNA MULLINS,                                            :

                         Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                       Defendant.                 :

Case No. 3:10-cv-101

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g).  The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.  The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits

prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI in April, 2000, alleging disability from April 1, 1995, due to irritable bowel syndrome, atypical chest pain, sensitivity to cold, shortness of breath and chronic fatigue. *See,* PageID 101. Plaintiff's application was denied at the initial and reconsideration levels. *See,* PageID 98-111. Administrative Law Judge Daniel Shell held a hearing and subsequently determined that Plaintiff was capable of performing a limited range of light work and that there was a significant number of jobs in the economy that she was capable of performing. *Id.* Plaintiff took no further appeal.

Plaintiff filed a second application for SSI in February, 2003, alleging disability from November 3, 1995. *See,* PageID 115-26. Plaintiff's application was denied at the initial and reconsideration levels. *See, Id.* Administrative Law Judge George Spidel held a hearing and subsequently determined that Plaintiff was capable of performing a limited range of light work, that there was a significant number of jobs in the economy that she was capable of performing and therefore Plaintiff was not disabled. *See, Id.* Plaintiff took no further appeal.

Plaintiff filed a third application for SSI on August 16, 2005, alleging disability from August, 2005, due to malformed intestines, colon problems, and mental problems. (PageID 181-82; 203). Plaintiff's application was denied initially and on reconsideration. (PageID 127-29). A hearing was held before Administrative Law Judge Amelia Lombardo, and subsequently determined that Plaintiff is not disabled. (PageID 60-70). The Appeals Council denied Plaintiff's request for review, (PageID 53-56), and Judge Lombardo's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Lombardo found that Plaintiff has severe depression, anxiety disorder, obsessive-compulsive disorder, and schizoaffective disorder, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (PageID 63, ¶ 2); PageID 65, ¶ 3). Judge Lombardo also found that Plaintiff has the residual functional capacity to perform work at all exertional levels but that she is limited to low stress jobs which involve no direct dealing with the public, no production quotas, and no over-the-shoulder supervision. (PageID 66, ¶ 4). Judge Lombardo then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (PageID 69, ¶ 9). Judge Lombardo concluded that Plaintiff is not disabled and therefore not entitled to

benefits under the Act. (PageID 70).

Consulting rheumatologist Dr. Stevens reported on August 13, 1999, that twenty years ago, Plaintiff had bypass surgery for obesity and since then she has had problems with infections in a blind loop, for the past twelve years, she has had Raynaud's disease, and that her physical examination was normal. (PageID 259-60). Dr. Stevens also reported that although Plaintiff's sed rate was elevated, he did not think that she had a rheumatologic autoimmune disease and he opined that Plaintiff's primary problem was Raynaud's disease. *Id.*

Examining psychologist Dr. Flexman reported on October 25, 2005, that Plaintiff had a high school education, was moderately obese, displayed a relaxed posture, had restless general body movements, and did not display overt pain behaviors. (PageID 261-64). Dr. Flexman also reported that Plaintiff's speech was normal, she was compliant with good energy level, her affect was appropriate, her attitude was flat and passive, her concentration was poor, her effort was poor, her intellectual functioning was average, her memory was fair to good, and that obsessive thinking concerning somatic or other psychological problems was out of proportion with reality and somatization was present. *Id.* Dr. Flexman identified Plaintiff's diagnoses as schizoaffective disorder and obsessive/compulsive disorder and he assigned her a GAF of 45. *Id.* Dr. Flexman opined that Plaintiff's abilities to understand, remember, and carry out short, simple instructions and to maintain sustained attention were slightly impaired, her abilities to make judgments for simple work-related decisions, to interact with supervisors, and to respond appropriately to work pressures in a normal work environment were moderately impaired, and her ability to interact with the public was markedly impaired. *Id.*

The record contains Plaintiff's treatment notes from Day-Mont West Focus Care

dated December 4, 2003, to December 15, 2008. (PageID 354-451; 453-72; 475-86). Those records reveal that Plaintiff received mental health treatment at that facility for major depressive disorder, single episode and severe, PTSD, and rule out schizoid personality disorder. *Id.* Over time, Plaintiff's mental health care providers reported that Plaintiff was moderately depressed, had a somewhat blunted affect, had slow speech, and was anxious. *Id.* Those notes also reveal that Plaintiff was treated with counseling and medication. *Id.* In addition, the Day-Mont notes reveal that Plaintiff reported obsessive compulsive behaviors such as washing her cats and dogs three times a day and bathing two to seven times a day, that she heard voices, and that she continued to live in the past. *Id.*

On April 27, 2006, Plaintiff's treating psychiatrist Dr. Pasha reported that Plaintiff's diagnosis was major depression, recurrent and severe with features of obsessive compulsive disorder, her condition was poor but stable, and her prognosis was poor. (PageID 284-85). Dr. Pasha also reported that Plaintiff was anxious, depressed, displayed disabling obsessive compulsive behaviors, and complained of hallucinations. *Id.* Dr. Pasha opined that Plaintiff was disabled. *Id.*

Treating psychologist Mr. Stanchina reported on June 12, 2006, that Plaintiff's abilities to perform work-related activities were moderately to markedly limited and that she was being treated for major depression which interfered with her memory, concentration, and stress tolerance. (PageID 289-90). Mr. Stanchina opined that Plaintiff was disabled. *Id.*

Dr. Pasha reported on July 18, 2008, that Plaintiff had circumstantial and illogical thought processes, some paranoid ideation, delusions, auditory hallucinations, depressed mood, labile affect, and poor cognition. (PageID 480). On August 11, 2008, Mr. Stanchina reported that Plaintiff's diagnosis was major depressive disorder, that her GAF was 55, she had vegetative

symptoms of depression, she frequently missed appointments, and that her prognosis was guarded. (PageID 472-74). Mr Stanchina also reported that Plaintiff would be absent from work more than three times a month due to her impairment, she was markedly limited in activities of daily living, had marked difficulties in maintaining social functioning, marked deficiencies of concentration, persistence, or pace, and that she had moderate episodes of deterioration or decompensation in the work setting. *Id.*

The record contains a copy of treating digestive specialist Dr. Gaylor's office notes dated October 8, 1999, through December, 2008. (PageID 304-54; 395; 487-91). Those notes reveal that Dr. Gaylor has treated Plaintiff for abdominal pain, weakness, and recurrent diarrhea. *Id.* On June 4, 2003, Dr. Gaylor reported that Plaintiff had short bowel syndrome, chronic fatigue, anxiety, depression, and intermittent overgrowth of the small bowel in the setting of previous intestinal surgery, that she had been unable to work, and that her prognosis for returning to work was guarded. *Id.* Dr. Gaylor reported in February, 2005, that Plaintiff had eight bowel movements a day and in May, 2005, he reported Plaintiff had eight to twelve loose bowel movements a day. *Id.* In June, 2005, Dr. Gaylor noted that Plaintiff reported that she was chronically fatigued, but he opined it was not related to her gastric impairment but to her depression and anxiety. *Id.* Plaintiff continued to seek treatment from Dr. Gaylor for complaints of gas, intermittent diarrhea, weakness, and fatigue. *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting the opinion of her treating psychiatrist and by failing to find that she became disabled on her fifty-fifth birthday. (Doc. 9).

In support of her first Error, Plaintiff argues that the Commissioner erred by rejecting

Dr. Pasha's opinion that she is unemployable.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544*.* "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07, *citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack*

*of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Dr. Pasha's opinion that Plaintiff is unemployable, Judge Lombardo determined that it was not supported by his treatment notes and was inconsistent with other evidence of record. (PageID 68-69). The Commissioner did not err in reaching this conclusion.

First, a review of Plaintiff's mental health treatment notes from Day-Mont where she saw Dr. Pasha and Mr. Stanchina reveals that Plaintiff frequently missed her appointments and was not compliant with taking medications. *See*, *e.g.,* PageID 423, 451, 473. In addition, although Dr. Pasha opined that Plaintiff is unemployable, the Day-Mont notes also reveal that Plaintiff received treatment on only a monthly basis, that her condition was stable, and that her GAF was generally 50-55 indicating, at worst, moderate impairments in the ability to function. *See, e.g.,* PageID 472.

Dr. Pasha's opinion is also inconsistent with the other evidence of record. For example, and as noted above, Dr. Flexman opined that Plaintiff had normal speech, that her effort during the evaluation was poor, her affect was appropriate, her memory was fair to good, and that although her ability to interact with the general public was markedly impaired, her abilities to perform other work-related mental activities were, at worst, moderately impaired. In addition, Dr. Pasha's opinion is inconsistent with the reviewing mental health experts' opinions. (PageID 266-83; 287). Finally, Dr. Pasha's opinion is inconsistent with Plaintiff's daily activities which include preparing food throughout the day, doing the dishes, laundry, dusting, cleaning, and sweeping, participating in her hobbies of make-up and writing, visiting others, reading, caring for her pets, and managing her finances. *See, e.g.,* PageID 262; 283.

Under these circumstances, the Commissioner had an adequate basis for rejecting Dr. Pasha's opinion that Plaintiff is unemployable.

Plaintiff argues next that the Commissioner erred by failing to find that she became disabled as her fifty-fifth birthday. Plaintiff's position is that based on the Commissioner's prior finding in a previous application, he erred by failing to find that she has a severe physical impairment, specifically a gastrointestinal impairment. The thrust of Plaintiff's argument is that the Commissioner failed to abide by *Drummond v. Commissioner of Social Security,* 126 F.3d 837, 842 (6th Cir. 1997), and Acquiescence Ruling (AR) 98-4(6), 1998 WL 283902 (June 1, 1998), which essentially provide that absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the residual functional capacity finding of a previous ALJ.

Judge Lombardo noted that while treatment notes reflect significant gastrointestinal symptoms in the past, the notes since the date of Plaintiff's current alleged onset of disability indicate that her condition has improved in response to medication and that it is stable. (PageID 64). The question is whether Judge Lombardo's finding that Plaintiff's gastrointestinal symptoms improved since February 2005, the date of the most recent prior decision is supported by substantial evidence.

A review of his clinical notes reveals that in June, 2004, shortly after the most recent prior decision, Dr. Gaylor reported that Plaintiff's bowels were "doing quite well." (PageID 316). In addition, over time, Dr. Gaylor noted that Plaintiff had responded well to medications, was having normal bowel movements, and that she occasionally had a flare-up of diarrhea, but that it was controlled with conservative treatment. *See, e.g.,* PageID 312, 311, 307, 452, 487-89.

Under these facts, the Commissioner properly found that the record supported the

11

conclusion that Plaintiff's gastrointestinal symptoms had improved since February, 2005. Therefore, the Commissioner was not bound by the conclusions in the most recent prior decision and he did not err by failing to properly apply *Drummond* and AR 98-4(6).

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

December 14, 2010.

                 *s/ Michael R. Merz*
                 United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).